IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARDNEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>R. DIAZ, et al.,<br><br>　　　　　Defendants. | No.  2:20-CV-01587-WBS-DMC-P<br><br><br><br>ORDER |

　　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint.  See ECF No. 1.

　　　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff, a California state prisoner, brings three claims variously alleging violations of the First, Fourth, and Eighth Amendments to the United States Constitution. ECF No. 1 at 1, 18, 24, 28. All alleged events occurred while Plaintiff was incarcerated at California State Prison-Sacramento ("CSP-Sac"). See id. at 1. He names six defendants: (1) R. Diaz, the former Secretary for the California Department of Corrections and Rehabilitation; (2) Hampton, a correctional lieutenant at CSP-Sac; (3) Houghland, a correctional lieutenant at CSP-Sac; (4) R. Meier, a CSP-Sac official; (5) Dr. K. Patel, a psychologist at CSP-Sac; and (6) Bullard, a correctional sergeant at CSP-Sac. Id. at 10.

Each of Plaintiff's claims extend from his accusations of sexual harassment directed against Defendant Patel, and subsequent administrative proceedings arising from those accusations. See id. at 18, 24, 28. Plaintiff alleges that, after a doctor's appointment, he returned to his cell to wash and change clothes. Id. at 11, 18. Defendant Patel stood roughly twenty yards away in an adjacent dayroom alongside correctional officer Nunnery. Id. at 11, 19. Patel allegedly stared into Plaintiff's cell, watching him undress. Id. Plaintiff covered the cell's exterior window to block sunlight and darken the cell to cloak him from Patel's gaze. Id. Inmates are not permitted to cover cell door windows, however, and although the cell was dark, Patel continued to stare. Id. at 11, 18–19.

A correctional sergeant later came to Plaintiff's cell and escorted him to administrative segregation. Id. The sergeant told Plaintiff that he was being assigned to administrative segregation because Patel had made indecent exposure allegations against him. Id. Plaintiff contends that Patel's incident report states that she was standing in the dayroom and

2

1  noticed Plaintiff standing in his cell moving his arms below his waist.  Id. at 12.  She alleges that
2  Plaintiff stood naked on his toilet and exposed his penis.  ECF No. 1 at 12.  Accordingly, prison
3  officials accused Plaintiff of indecent exposure.  Id.  Plaintiff contends, nevertheless, that neither
4  his actions nor the factual allegations in Patel's report fall within the scope of indecent exposure
5  regulations.  Id.

6      Patel, according to Plaintiff, effectively admitted that Plaintiff's actions did not
7  constitute indecent exposure during the hearing that followed her incident report.  Id.  Plaintiff
8  contends that Patel stated she had no way of knowing if Plaintiff was standing on the toilet and
9  that she was not positive what Plaintiff was doing.  Id.  Plaintiff suggests that Patel's statement
10 means she assumed or was coached to say that Plaintiff exposed himself.  Id.  He also suggests
11 that Patel admitted to standing behind Officer Nunnery so that she could peer around him into
12 Plaintiff's cell.  Id.  Plaintiff attempted to ask Patel about California regulations governing staff
13 sexual misconduct and whether it was reasonably necessary to invade Plaintiff's privacy to
14 maintain safety and security.  Id. at 13.  Defendant Hampton, the hearing officer, disallowed the
15 questions, deeming them irrelevant.  Id. Plaintiff contends Hampton was in error.  Id. He also
16 maintains that Patel's actions, and the consequent hearing against him, are symptomatic of
17 ongoing staff sexual misconduct (and the inaction of administrative officials to stop it) within the
18 California Department of Corrections and Rehabilitation.  Id.  He contends that "Defendants" or
19 "officials" are aware of continuing staff sexual abuse of inmates.  Id. at 13, 20, 23.

20     Plaintiff was brought before the Institutional Classification Committee, chaired by
21 Defendant R. Meier.  Id. at 14.  Plaintiff asserts that Meier was adamant from the beginning of the
22 hearing that Plaintiff be placed in a pilot program at California State Prison-Corcoran ("CSP-
23 Corcoran") for inmates with problems exposing themselves.  Id. Plaintiff objected, stating that
24 female staff members routinely stare at inmates in their cells for personal and punitive purposes.
25 Id.  Plaintiff also told Meier he had an upcoming court date in Sacramento and that he had
26 enemies and safety concerns at CSP-Corcoran.  Id.  Meier allegedly disregarded Plaintiff's
27 objections and arbitrarily forced Plaintiff to be assigned to the pilot "IEX" program.  Id.  Meier's
28 classification report assigning Plaintiff to the IEX program was allegedly fraudulent, containing

1   fabricated information and falsely stating that Plaintiff agreed to the program.  Id.  Plaintiff also
2   alleges Meier was aware of prison staff's widespread sexual abuse of inmates.  ECF No. 1 at 20.
3           Following Meier's report assigning Plaintiff to the IEX program, Plaintiff became
4   suicidal.  Id. at 15. Overwhelmed by "psychological abuse" at the hands of prison staff, he was
5   placed in the crisis unit on suicide watch.  Id. Upon discharge from the crisis unit, Plaintiff was
6   returned to the administrative segregation unit to await transfer to CSP-Corcoran and the IEX
7   program.  Id. Defendants Houghland[1] and Bullard, alongside other correctional officers, came to
8   escort Plaintiff on his transfer date. Id. Plaintiff explained that he does not have an indecent
9   exposure problem.  Id. at 16. Houghland allegedly conducted a "mock" disciplinary hearing
10  outside Plaintiff's cells, stated Plaintiff was guilty, and asked Plaintiff if there was another reason
11  that he would not leave his cell.  Id. Sergeant Bullard then allegedly emptied an entire sixteen-
12  ounce canister of pepper spray into Plaintiff's face.  Id. Bullard and Houghland let Plaintiff
13  anguish for five minutes before decontaminating Plaintiff's face with cold water.  Id. The water
14  did not remove the pepper spray and Plaintiff's face burned for the entirety of the five to six-hour
15  trip from CSP-Sac to CSP-Corcoran.  Id.
16          On arrival at CSP-Corcoran, Plaintiff was again placed in the crisis unit before
17  being transferred to California Men's Colony's crisis unit where he remained for several weeks.
18  Id. at 17. Plaintiff alleges that he was never admitted to the IEX program, but instead transferred
19  back to CSP-Sac.  Id. Houghland and Bullard wrote Plaintiff up on a rule violation report,
20  alleging that he obstructed a peace officer.  Id. No redress came of Plaintiff's exhausted
21  administrative remedies regarding Bullard's alleged excessive use of force in spraying Plaintiff
22  with the pepper spray.  Id. Plaintiff alleges that administrative staff continues to fail to address
23  Defendants' abusive conduct.  Id.
24  / / /
25
26      [1]   Plaintiff identifies a Lieutenant Holigan as the correctional officer who accompanied Sergeant Bullard to transfer him to CSP-Corcoran. See id. at 15–16. No Lieutenant
27  Holigan, however, is named as a defendant, but a Lieutenant Houghland is. Id. at 1, 9. Plaintiff also uses the name Houghland alongside Bullard's name in his third cause of action. Id. at 9, 28.
28  The Court accordingly assumes that Lieutenant Holigan is Lieutenant Houghland.

4

1          Plaintiff's first cause of action asserts Patel, Meier, Diaz, and Hampton violated
2   the Fourth Amendment in failing to protect his right to privacy; namely, failing to protect or
3   redress Patel's invasion of his privacy beyond any necessary measure to maintain security or
4   safety.  Id. at 18–23.  He also asserts that Defendants' were deliberately indifferent in failing to
5   protect him from sexual misconduct (such as the unrestricted gaze of members of the opposite
6   sex), which rises to cruel and unusual punishment in violation of the Eighth Amendment.  Id.
7          Plaintiff's second claim asserts that Defendants Diaz, Hampton, and Meier further
8   violated the Eighth Amendment in disregarding that his conduct did not fall within indecent
9   exposure regulations, and falsifying (or failing to rectify) reports about Plaintiff's alleged
10  indecent exposure and suitability for the IEX program.  Id. at 24–28.  Plaintiff also asserts that
11  Hampton, in deeming his interview questions to Patel irrelevant, violated his First Amendment
12  right to gather information to rebut the case against him.  Id. at 24–27.  He contends that Hampton
13  interfered with Plaintiff's questions in an effort to punish him and retaliate against him for
14  opposing the indecent exposure charge and "investigating" staff sexual misconduct.  Id. at 24, 27.
15  Plaintiff also alleges Diaz and Meier are responsible for the same First Amendment violation.  Id.
16  at 24.
17         Finally, Plaintiff claims that Houghland and Bullard used unjustified, excessive
18  force against him when they transferred him to CSP-Corcoran, holding a mock disciplinary
19  hearing and pepper spraying him without cause.  Id. 28–30.  He asserts that the excessive force
20  constituted cruel and unusual punishment in violation of the Eighth Amendment.  Id. at 28.
21  Plaintiff lists the allegedly false, unwarranted rules violation issued to him upon his return to
22  CSP-Sac as part of the conduct violating the Eighth Amendment.  Id.
23
24                              **II.  DISCUSSION**
25         In his first cause of action, Plaintiff states cognizable Fourth Amendment and
26  Eighth Amendment claims against Defendant Patel for her alleged invasion of his privacy beyond
27  that necessary to maintain security or safety.  He does not state a cognizable Fourth Amendment
28  or Eighth Amendment claim against Hampton or Meier for failure to protect him from Patel's

conduct. Plaintiff's second cause of action states an Eighth Amendment claim against Defendants Hampton and Meier to the extent it alleges they knew of and were deliberately indifferent to ongoing staff sexual misconduct. He also states a cognizable First Amendment claim against Hampton and Meier to the extent he alleges they improperly interfered with the classification process to retaliate against him for asking questions and highlighting staff sexual abuse of inmates. Plaintiff's third cause of action states a cognizable Eighth Amendment claim against Houghland and Bullard for the use of unconstitutionally excessive force. None of Plaintiff's allegations against Defendant Diaz state a cognizable claim. The Court will grant Plaintiff leave to amend.

**A. Claims Against Defendant R. Diaz:**

Plaintiff's allegations do not establish any cognizable claim against Defendant Diaz, both because they do not satisfy Federal Rule of Civil Procedure 8 and because there is no allegation that Diaz knew of or directed unconstitutional conduct.

As to Rule 8, as discussed above, Rule 8 requires a complaint to contain a short and plain statement of the claim. The Federal Rules of Civil Procedure do not require detailed factual allegations, but vague and conclusory allegations of responsibility are insufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must allege with some degree of particularity overt acts by specific defendants that support the claims, such that the complaint gives defendants fair notice of the claims and the grounds on which they rest. See Kimes, 84 F.3d at 1129. "[A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plaintiff merely concludes, in stating his causes of action, that Diaz is among those defendants responsible for some alleged unconstitutional conduct. See ECF No. 1 at 18, 24. Plaintiff does contend that "Defendants" collectively are responsible for Patel's invasion of his privacy, for failing to rectify Patel's actions, for interfering with his First Amendment rights to gather information at his classification

1  hearing, and generally for being deliberately indifferent to the cruel and unusual punishment
2  caused by the invasion of his privacy.  But such broad, conclusory allegations do not allege with
3  adequate particularity any overt actions by Diaz that would support Plaintiff's claims against him.
4        Furthermore, supervisory personnel are generally not liable under § 1983 for the
5  actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that
6  there is no respondeat superior liability under § 1983).  A supervisor is only liable for the
7  constitutional violations of subordinates if the supervisor participated in or directed the violations.
8  See id.  The United States Supreme Court has rejected the notion that a supervisory defendant can
9  be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct
10  because government officials, regardless of their title, can only be held liable under § 1983 for his
11  or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676
12  (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a
13  repudiation of constitutional rights and the moving force behind a constitutional violation may,
14  however, be liable even where such personnel do not overtly participate in the offensive act.  See
15  Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).
16        When a defendant holds a supervisory position, the causal link between such
17  defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.
18  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
19  1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in
20  civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
21  Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the
22  official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.
23        Plaintiff's complaint fails to allege a causal link between Diaz, either individually
24  or as CDCR Secretary, and the various alleged constitutional violations.  Plaintiff's vague
25  conclusion that Diaz is responsible for or is encompassed within the category of "Defendants"
26  who acted unconstitutionally, is insufficient.
27  ///
28  ///

**B. Defects in Plaintiff's First Cause of Action:**

    **1. Fourth Amendment Failure to Protect Claims Against Hampton and Meier:**

Prisoners do not have a Fourth Amendment right of privacy in their cells. See, e.g., Hudson v. Palmer, 468 U.S. 517, 525–26 (1984); Somers v. Thurman, 109 F.3d 614, 617–18 (9th Cir. 1997); see also United States v. Ross, 771 F. App'x 345, 348 (9th Cir. 2019). Prisoners do, however, retain a limited interest in bodily privacy and shielding themselves from being observed while nude, particularly by members of the opposite sex. See, e.g., Byrd v. Maricopa Cty. Bd. of Supervisors, 845 F.3d 919, 923 (2017); Michenfelder v. Sumner 860 F.2d 328, 333–34 (9th Cir. 1988); cf. also Robino v. Iranon, 145 F.3d 1109, 1111 (9th Cir. 1998) (per curiam). This right is not violated if guards only make casual observations of the prisoner or if the observations are made from a distance. See Michenfelder, 860 F.2d at 334.

Defendant Patel's connection to the alleged Fourth Amendment violation is obvious. From a relatively close position, Patel allegedly made more than a casual observation of Plaintiff while he was nude in his cell, staring for a prolonged period without any safety or security justification and subsequently accusing him of indecent exposure. There are, accordingly, adequate factual allegations for Plaintiff's Fourth Amendment claim to proceed against Patel. Outside of Hampton's and Meier's involvement in subsequent investigative and classification hearings based on Patel's, Plaintiff fails to allege how either Hampton or Meier is connected to the underlying privacy violation.

Although law enforcement officials, such as police officers and correctional officers, may be held liable for failure to intercede when fellow officers violate the constitutional rights of a citizen or prisoner, liability attaches only if the officer in question had the opportunity to intercede. See Cunningham v. Gates, 229 F.3d 1271, 1289–90 (9th Cir. 2000); Galvan v. City of Vacaville, No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896, at *2–3 (E.D. Cal. Sept. 15, 2018); Melendez v. Hunt, NO. 1:13-cv-00279 AWI-BAM (PC), 2016 WL 5156469, at *11 (E.D. Cal. Sept. 21, 2016); Freeland v. Sacramento City Police Dep't, No. CIV S-06-0187 LKK DAD P., 2010 WL 408908, at *4–5, 14–15 (E.D. Cal. Jan. 29, 2010). Plaintiff, to his credit, states that prison officials have failed to address a pattern of staff sexual impropriety. Nevertheless, he

makes no allegation that either Hampton or Meier knew of or could have interceded to prevent Patel's alleged sexual misconduct. He only concludes that they failed to protect him or correct Patel's actions *after* Patel's alleged violation. Plaintiff thus fails to state a Fourth Amendment claim against either Hampton or Meier. Cf. Freeland, 2016 WL 5156469, at *4–5, 14–15.

### 2. Eighth Amendment Failure to Protect Claims Against Hampton and Meier:

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer v. Brennan, 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). That responsibility to protect requires prison officials to protect prisoners from injury by other prisoners and from other correctional officers. Farmer, 511 U.S. at 833–834; Cunningham, 229 F.3d at 1289; Melendez, 2016 WL 5156469, at *11. Inmates alleging that prison officials failed to protect their safety in violation of the Eighth Amendment must show that officials acted with deliberate indifference to a risk of serious harm or injury to the inmate. See Labatad, 714 F.3d at 1160. Deliberate indifference entails both objective and subjective components; officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." Farmer, 511 U.S. at 837. Liability attaches when prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." See id. at 847. A prison official can only be held responsible for a failure to intercede if he or she had a realistic opportunity to intercede and elected not to do so. See Cunningham, 229 F.3d at 1289.

Plaintiff's Eighth Amendment claim against Hampton and Meier in his first cause of action fails for similar reasons as the Fourth Amendment claim. He makes no allegation that either Hampton or Meier knew of or could have interceded to prevent Patel's alleged constitutional violation. He only concludes that they failed to protect him or correct Patel's actions *after* she allegedly stared into Plaintiff's cell. Hampton and Meier can only be liable for failure to intercede if they had a realistic opportunity to prevent Patel's sexual misconduct. There is no such allegation in Plaintiff's complaint. The claim cannot proceed as alleged.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  November 2, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

10