**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JOHN HARDNEY,

Plaintiff,

v.

HAMPTON, et al.,

Defendants.

No. 2:20-CV-01587-WBS-DMC-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion, ECF No. 19, to sever unrelated claims and revoke Plaintiff's in forma pauperis status.

## I. BACKGROUND

On November 3, 2020, the Court screened Plaintiff's original complaint and provided Plaintiff an opportunity to file a first amended complaint to cure various defects. See ECF No. 10. The Court summarized Plaintiff's allegations as follows:

> Plaintiff, a California state prisoner, brings three claims variously alleging violations of the First, Fourth, and Eighth Amendments to the United States Constitution. ECF No. 1 at 1, 18, 24, 28. All alleged events occurred while Plaintiff was incarcerated at California State Prison-Sacramento ("CSP-Sac"). See id. at 1. He names six defendants: (1) R. Diaz, the former Secretary for the California Department of Corrections and Rehabilitation; (2) Hampton, a correctional lieutenant at CSP-Sac; (3)

Houghland, a correctional lieutenant at CSP-Sac; (4) R. Meier, a CSP-Sac official; (5) Dr. K. Patel, a psychologist at CSP-Sac; and (6) Bullard, a correctional sergeant at CSP-Sac. Id. at 10.

Each of Plaintiff's claims extend from his accusations of sexual harassment against Defendant Patel and subsequent administrative proceedings. See id. at 18, 24, 28. Plaintiff alleges that, after a doctor's appointment, he returned to his cell to wash and change clothes. Id. at 11, 18. Defendant Patel stood roughly twenty yards away in an adjacent dayroom alongside correctional officer Nunnery. Id. at 11, 19. Patel allegedly stared into Plaintiff's cell, watching him undress. Id. Plaintiff covered the cell's exterior window to block sunlight and darken the cell to cloak him from Patel's gaze. Id. Inmates are not permitted to cover cell door windows, however, and although the cell was dark, Patel continued to stare. Id. at 11, 18–19.

A correctional sergeant later came to Plaintiff's cell and escorted him to administrative segregation. Id. The sergeant told Plaintiff that he was being assigned to administrative segregation because Patel had made indecent exposure allegations against him. Id. Plaintiff contends that Patel's incident report states that she was standing in the dayroom and noticed Plaintiff standing in his cell moving his arms below his waist. Id. at 12. She alleges that Plaintiff stood naked on his toilet and exposed his penis. Id. Accordingly, prison officials accused Plaintiff of indecent exposure. Id. Plaintiff contends, nevertheless, that neither his actions nor the factual allegations in Patel's report fall within the scope of indecent exposure regulations. Id.

Patel, according to Plaintiff, effectively admitted that Plaintiff's actions did not constitute indecent exposure during the hearing that followed her incident report. Id. Plaintiff contends that Patel stated she had no way of knowing if Plaintiff was standing on the toilet and that she was not positive what Plaintiff was doing. Id. Plaintiff suggests that Patel's statement means she assumed or was coached to say that Plaintiff exposed himself. Id. He also suggests that Patel admitted to standing behind Officer Nunnery so that she could peer around him into Plaintiff's cell. Id. Plaintiff attempted to ask Patel about California regulations governing staff sexual misconduct and whether it was reasonably necessary to invade Plaintiff's privacy to maintain safety and security. Id. at 13. Defendant Hampton, the hearing officer, disallowed the questions, deeming them irrelevant. Id. Plaintiff contends Hampton was in error. Id. He also maintains that Patel's actions, and the consequent hearing against him, are symptomatic of ongoing staff sexual misconduct (and the inaction of administrative officials to stop it) within the California Department of Corrections and Rehabilitation. Id. He contends that "Defendants" or "officials" are aware of continuing staff sexual abuse of inmates. Id. at 13, 20, 23.

Plaintiff was brought before the Institutional Classification Committee, chaired by Defendant R. Meier. Id. at 14. Plaintiff asserts that Meier was adamant from the beginning of the hearing that Plaintiff be placed in a pilot program at California State Prison-Corcoran ("CSP-Corcoran") for inmates with problems exposing themselves. Id. Plaintiff objected, stating that female staff members routinely stare at inmates in their cells for personal and punitive purposes. Id. Plaintiff also told Meier he had an upcoming court date in Sacramento and that he had enemies and safety concerns at CSP-Corcoran. Id. Meier allegedly disregarded Plaintiff's objections and arbitrarily forced Plaintiff to be assigned to the pilot "IEX" program. Id. Meier's classification report assigning Plaintiff

to the IEX program was allegedly fraudulent, containing fabricated information and falsely stating that Plaintiff agreed to the program. Id. Plaintiff also alleges Meier was aware of prison staff's widespread sexual abuse of inmates. Id. at 20.

Following Meier's report assigning Plaintiff to the IEX program, Plaintiff became suicidal. Id. at 15. Overwhelmed by "psychological abuse" at the hands of prison staff, he was placed in the crisis unit on suicide watch. Id. Upon discharge from the crisis unit, Plaintiff was returned to the administrative segregation unit to await transfer to CSP-Corcoran and the IEX program. Id. Defendants Houghland[1] and Bullard, alongside other correctional officers, came to escort Plaintiff on his transfer date. Id. Plaintiff explained that he does not have an indecent exposure problem. Id. at 16. Houghland allegedly conducted a "mock" disciplinary hearing outside Plaintiff's cells, stated Plaintiff was guilty, and asked Plaintiff if there was another reason that he would not leave his cell. Id. Sergeant Bullard then allegedly emptied an entire sixteen-ounce canister of pepper spray into Plaintiff's face. Id. Bullard and Houghland let Plaintiff anguish for five minutes before decontaminating Plaintiff's face with cold water. Id. The water did not remove the pepper spray and Plaintiff's face burned for the entirety of the five to six-hour trip from CSP-Sac to CSP-Corcoran. Id.

On arrival at CSP-Corcoran, Plaintiff was again placed in the crisis unit before being transferred to California Men's Colony's crisis unit where he remained for several weeks. Id. at 17. Plaintiff alleges that he was never admitted to the IEX program, but instead transferred back to CSP-Sac. Id. Houghland and Bullard wrote Plaintiff up on a rule violation report, alleging that he obstructed a peace officer. Id. No redress came of Plaintiff's exhausted administrative remedies regarding Bullard's alleges excessive use of force in spraying Plaintiff with the pepper spray. Id. Plaintiff alleges that administrative staff continue to fail to address Defendants' abusive conduct. Id.

Plaintiff's first cause of action asserts Patel, Meier, Diaz, and Hampton violated the Fourth Amendment in failing to protect his right to privacy; namely, failing to protect or redress Patel's invasion of his privacy beyond any necessary measure to maintain security or safety. Id. at 18–23. He also asserts that Defendants' were deliberately indifferent in failing to protect him from sexual misconduct (such as the unrestricted gaze of members of the opposite sex), which rises to cruel and unusual punishment in violation of the Eighth Amendment. Id.

Plaintiff's second claim asserts that Defendants Diaz, Hampton, and Meier further violated the Eighth Amendment in disregarding that his conduct did not fall within indecent exposure regulations, and falsifying (or failing to rectify) reports about Plaintiff's alleged indecent exposure and suitability for the IEX program. Id. at 24–28. Plaintiff also asserts that Hampton, in deeming his interview questions to Patel irrelevant, violated his First Amendment right to gather information to rebut the case against him. Id. at 24–27. He contends that Hampton interfered with Plaintiff's questions to punish him and retaliate against him for opposing the indecent exposure charge and "investigating"

---

[1] Plaintiff identifies a Lieutenant Holigan as the correctional officer who accompanied Sergeant Bullard to transfer him to CSP-Corcoran. See id. at 15–16. No Lieutenant Holigan, however, is named as a defendant, but a Lieutenant Houghland is. Id. at 1, 9. Plaintiff also uses the name Houghland alongside Bullard's name in his third cause of action. Id. at 9, 28. The Court accordingly assumes that Lieutenant Holigan is Lieutenant Houghland.

> staff sexual misconduct. Id. at 24, 27. Plaintiff also alleges Diaz and Meier are responsible for the same First Amendment violation. Id. at 24.
>
> Finally, Plaintiff claims that Houghland and Bullard used unjustified, excessive force against him when they transferred him to CSP-Corcoran, holding a mock disciplinary hearing and pepper spraying him without cause. Id. 28–30. He asserts that the excessive force constituted cruel and unusual punishment in violation of the Eighth Amendment. Id. at 28. Plaintiff lists the allegedly false, unwarranted rules violation issued to him upon his return to CSP-Sac as part of the conduct violating the Eighth Amendment. Id.
>
> ECF No. 10, pgs. 2-5.

The Court summarized its conclusions as follows:

> In his first cause of action, Plaintiff states cognizable Fourth Amendment and Eighth Amendment claims against Defendant Patel for her alleged invasion of his privacy beyond that necessary to maintain security or safety. He does not state a cognizable Fourth Amendment or Eighth Amendment claim against Hampton or Meier for failure to protect him from Patel's conduct. Plaintiff's second cause of action states an Eighth Amendment claim against Hampton or Meier to the extent it alleges they knew of and were deliberately indifferent to ongoing staff sexual misconduct. He also states a cognizable First Amendment claim against Hampton and Meier to the extent he alleges they improperly interfered with the classification process to retaliate against him for asking questions and highlighting staff sexual abuse of inmates. Plaintiff's third cause of action states a cognizable Eighth Amendment claims against Houghland and Bullard for the use of unconstitutionally excessive force. None of Plaintiff's allegations against Defendant Diaz state a cognizable claim. The Court will grant Plaintiff leave to amend.
>
> Id. at 5-6.

Plaintiff was cautioned that, if no amended complaint was filed within the time provided, the action would proceed on the cognizable claims raised in the original complaint and the defective claims would be dismissed. See id. As of March 9, 2021, Plaintiff had not filed a first amended complaint or sought additional time to do so and the Court issued an order for service of Plaintiff's cognizable claims and findings and recommendations for dismissal of defective claims. See ECF Nos. 13 and 14. The District Judge adopted the findings and recommendations in full on June 9, 2021, resulting in dismissal of all claims against Defendant Diaz and Plaintiff's Fourth and Eighth Amendment claims against Defendants Hampton and Meier. See ECF No. 22. Service was initiated as to the following Defendants and claims: (1) Plaintiff's claims against Defendant Patel for her alleged violation of his privacy beyond that

necessary to maintain security or safety; (2) Plaintiff's claims against Defendants Hampton and Meier to the extent Plaintiff alleges they improperly interfered with the classification process to retaliate against him for asking questions and highlighting staff sexual abuse of inmates; and (3) Plaintiff's claims against Defendants Houghland and Bullard for the use of excessive force. See ECF No. 13.

## II. DISCUSSION

In the pending motion, Defendants argue: (1) Plaintiff's in forma pauperis status should be revoked under the "three strikes" provision of the Prison Litigation Reform Act (PLRA); and (2) the Court should sever improperly joined claims. See ECF No. 19.

### A. Revocation of In Forma Pauperis Status

The PLRA's "three strikes" provision, found at 28 U.S.C. § 1915(g), provides as follows:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained . . ., brought an action . . . in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
>
> Id.

Thus, when a prisoner plaintiff has had three or more prior actions dismissed for one of the reasons set forth in the statute, such "strikes" preclude the prisoner from proceeding in forma pauperis unless the imminent danger exception applies. The alleged imminent danger must exist at the time the complaint is filed. See Andrews v. Cervantes, 493 F.3d 1047, 1052 (9th Cir. 2007). A prisoner may meet the imminent danger requirement by alleging that prison officials continue with a practice that has injured him or others similarly situated in the past, or that there is a continuing effect resulting from such a practice. See Williams v. Paramo, 775 F.3d 1182, 1190 (9th Cir. 2014).

/ / /

/ / /

Dismissals for failure to exhaust available administrative remedies generally do not count as "strikes" unless the failure to exhaust is clear on the face of the complaint. See Richey v. Dahne, 807 F.3d 1202, 1208 (9th Cir. 2015). Dismissed habeas petitions do not count as "strikes" under § 1915(g). See Andrews v. King, 398 F.3d 1113, 1122 (9th Cir. 2005). Where, however, a dismissed habeas action was merely a disguised civil rights action, the district court may conclude that it counts as a "strike." See id. at n.12.

When in forma pauperis status is denied, revoked, or otherwise unavailable under § 1915(g), the proper course of action is to dismiss the action without prejudice to re-filing the action upon pre-payment of fees at the time the action is re-filed. In Tierney v. Kupers, the Ninth Circuit reviewed a district court's screening stage dismissal of a prisoner civil rights action after finding under § 1915(g) that the plaintiff was not entitled to proceed in forma pauperis. See 128 F.3d 1310 (9th Cir. 1998). Notably, the district court dismissed the entire action rather than simply providing the plaintiff an opportunity to pay the filing fee. The Ninth Circuit held that the plaintiff's case was "properly dismissed." Id. at 1311. Similarly, in Rodriguez v. Cook, the Ninth Circuit dismissed an inmate's appeal in a prisoner civil rights action because it concluded that he was not entitled to proceed in forma pauperis on appeal pursuant to the "three strikes" provision. See 169 F.3d 1176 (9th Cir. 1999). Again, rather than providing the inmate appellant an opportunity to pay the filing fee, the court dismissed the appeal without prejudice and stated that the appellant "may resume this appeal upon prepaying the filing fee."

This conclusion is consistent with the conclusions reached in at least three other circuits. In Dupree v. Palmer, the Eleventh Circuit held that denial of in forma pauperis status under § 1915(g) mandated dismissal. See 284 F.3d 1234 (11th Cir. 2002). The court specifically held that "the prisoner cannot simply pay the filing fee after being denied IFP status" because "[h]e must pay the filing fee at the time he *initiates* the suit." Id. at 1236 (emphasis in original). The Fifth and Sixth Circuits follow the same rule. See Adepegba v. Hammons, 103 F.3d 383 (5th Cir. 1996); In re Alea, 86 F.3d 378 (6th Cir. 2002).

/ / /

/ / /

1. Prior Strikes

In their motion, Defendants argue the following cases constitute prior "strikes" which preclude Plaintiff from proceeding in forma pauperis in the instant action:

DeArmond[2] v. Kane (Hardney I), No. 5:01-CV-20217 (N.D. Cal.) – Dismissed for failure to state a claim.

Hardney v. Moncus (Hardney II), No. 2:15-CV-1842 (E.D. Cal.) – Dismissed for failure to state a claim.

Hardney v. Ferguson (Hardney III), No. 3:17-CV-2390 (N.D. Cal.) – Dismissed for failure to state a claim.

Hardney v. Ferguson (Hardney IV), No. 18-15688 (9th Cir.) – Appeal dismissed as frivolous.

See ECF No. 19-1, pgs. 4-5.

Defendants have provided the Court with relevant portions of the record for each of these cases, which the Court may judicially notice. See Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967); see also ECF No. 20 (Defendants' Request for Judicial Notice).

The Court agrees with Defendants that these cases constitute prior "strikes" under the PLRA.

a. *Hardney I*

In Hardney I, the court summarized Plaintiff's allegations as follows:

> Plaintiff contends that the State appointed Defendant as Plaintiff's appellate attorney. After Defendant no longer represented Plaintiff, he refused to provide Plaintiff with the legal materials Plaintiff needed to pursue his case. After four years and several attempts to get Defendant to turn over the legal riles, Defendant finally complied. Plaintiff brings this suit complaining that the delay constituted deliberate indifference and due process violations of the Constitution.

ECF No. 20, pg. 8 (Exhibit A to Request for Judicial Notice).

The court dismissed the case in its entirety, stating:

> Plaintiff has not alleged facts establishing that the claimed deprivations were committed by a person acting under the color of state law. As such, Plaintiff's claims are not cognizable under 42 U.S.C. § 1983. Because Plaintiff has not presented a cognizable claim, the court

[2] John Hardney is the same person as John DeArmond. See Hardney v. LaMarque, No. 2:04-CV-0476 (E.D. Cal.).

must dismiss the action.

Id. at 9.

In his opposition to Defendants' motion, Plaintiff argues that the dismissal of Hardney I does not constitute a strike because the relief sought in that case was solely injunctive relief and, once the court determined Kane was not a proper defendant, the court lost jurisdiction to consider the relief requested. See ECF No. 23, pg. 8. According to Plaintiff, the court should have dismissed the case for lack of jurisdiction, not for failure to state a cognizable claim, and that a dismissal on the prior ground does not count as a "strike." See id. at 8-9.

Plaintiff's argument is unpersuasive. This Court is left with what the prior court in Hardney I actually did, not what Plaintiff contends the court should have done. Here, the prior court dismissed the action for failure to state a claim. Whether this was an error is an issue that Plaintiff should have pursued on direct appeal and may not pursue here by way of a collateral challenge. See Federated Dep't Stores v. Moirie, 452 U.S. 394, 398 (1981).

The Court finds that the dismissal of Hardney I constitutes a prior "strike."

b. *Hardney II*

In Hardney II, the court summarized Plaintiff's allegations as follows:

> Plaintiff alleges that on February 9, 2014, he and his cellmate, Zamora, were standing in their cell eating when an officer approached the cell, restrained plaintiff, and escorted him to the program office. ECF No. 1 at 8. Plaintiff was informed he was going to Administrative Segregation because defendant Moncus had observed plaintiff masturbating in the top bunk as she walked by conducting standing count. Id. at 9. A prison disciplinary hearing was postponed at plaintiff's request while the Amador County District Attorney's office investigated. Id. at 35-36. The District Attorney's office initiated criminal charges against plaintiff, but later dismissed the charges in the interest of justice, because defendant Moncus renounced her statements. Id. at 10, 35-37.
>
> After the criminal charges were dismissed, a disciplinary hearing was held. Id. at 35-36. At the disciplinary hearing, defendant Moeckly served as the hearing officer over plaintiff's objection that he was biased, due to the fact that Moeckly had failed to perform his duties as an investigating officer in plaintiff's unrelated excessive force complaint. Id. at 10.
>
> Plaintiff requested Zamora and defendant Moncus be called as witnesses at the disciplinary hearing. Id. at 10-11, 37. His request as to Zamora was denied because it was determined Zamora had no relevant or additional information other than the answers he had already provided to plaintiff's questions in the investigating officer's report. Id. at 37. During the hearing, defendant Moncus stated she observed plaintiff masturbating

> on the date in question. Id. However, plaintiff complains that defendant Moeckly failed to document plaintiff's statement that the case had been dismissed by the D.A. because Moncus had renounced her statement. Id. at 11.
>
> Plaintiff was found guilty of violating California Code of Regulations, Title 15, § 3007 based on the written Rules Violation Report ("RVR") authored by defendant Moncus which stated that she witnessed plaintiff lying on the upper bunk exposing himself and masturbating. Id. at 12, 35, 38. As punishment for receiving the RVR, plaintiff was sentenced to ten days loss of yard and one hundred eighty (180) days loss of canteen, appliances, vendor packages, telephone, and personal property privileges. Id. Plaintiff was not assessed any loss of behavior credits as a result of the RVR. Id.
>
> Plaintiff alleges defendant Moncus violated his Eighth Amendment rights when she entered the male housing unit without first announcing her presence which constituted sexual harassment in violation of the Prison Rape Elimination Act ("PREA"). Id. at 13-15. Plaintiff alleges defendant Moeckly violated his Fourteenth Amendment rights by failing to provide plaintiff with a fair disciplinary hearing. Id. at 16. He further alleges defendants Lizarraga and Beard violated his Fourteenth Amendment rights because, as top administrative employees, they were aware or should have been aware of the due process violations when plaintiff brought them to their attention through the appeals process. Id. at 17.
>
> ECF No. 20, pgs. 17-18 (Exhibit B to Request for Judicial Notice).

The court concluded that: (1) Plaintiff failed to state a claim under PREA, see id. at 20; (2) Plaintiff failed to state a claim under the Fourteenth Amendment, see id. at 21-23; and (3) Plaintiff failed to state a claim against any of the supervisory defendants, see id. at 23-24. The court also determined that leave to amend would be futile. See id. at 25. The court recommended that Plaintiff's case be dismissed in its entirety without leave to amend. See id. at 26. The district judge adopted the court's recommendation in full. See id. at 13-14.

In his opposition to Defendants' motion, Plaintiff argues Hardney II should not constitute a "strike" because the court misconstrued his claims. See ECF No. 23, pgs. 9-10. As with Plaintiff's argument regarding Harndey I, the Court rejects Plaintiff's contention that Hardney II cannot constitute a strike because the prior court erred. While Plaintiff states he filed an appeal, he also states he voluntarily dismissed it. See id. at 10. Plaintiff cannot collaterally challenge the prior court's judgment here. See Federated Dep't Stores, 452 U.S. at 398.

The Court finds that the dismissal of Hardney II constitutes a prior "strike."

/ / /

/ / /

c. *Hardney III*

In Hardney III, Plaintiff alleged that he was improperly denied parole. See ECF No. 20, pg. 85 (Exhibit C to Request for Judicial Notice). The court dismissed the case for failure to state a claim under § 1983. See id. at 87. Specifically, the court stated:

> Plaintiff was denied parole in November 2011. Docket No. 1 at 34-54. The transcripts from the hearing demonstrate that plaintiff was present and participated. *Id*. The BPH partially relied on several disciplinary violations petitioner was found guilty of from 2007 to 2009. Plaintiff argues that defendants failed to properly follow state law and state regulations. This fails to state a federal claim because plaintiff has not identified a violation of a right secured by the Constitution or laws of the United States. Plaintiff's allegations that his First Amendment freedoms were denied at the hearing are contradicted by the transcripts because plaintiff was allowed to speak throughout the hearing. That the defendants chose not to credit his verbal or written statements, does not demonstrate a constitutional violation.
>
> ECF No. 20, pg. 86.

By way of guidance to Plaintiff and not necessary to the court's conclusion, the court added the following dicta explaining the jurisdictional boundaries of a civil rights claim challenging the denial of parole:

> To the extent that plaintiff wishes to challenge his parole denial or the disproportionality of his sentence, he must file a habeas petition. In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). A challenge to the denial of parole, whether based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits, directly implicates the validity of the prisoner's continued confinement. *See Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) (noting that few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole).
>
> ECF No. 20, pgs. 86-87.

/ / /

/ / /

/ / /

In his opposition to Defendants' motion, Plaintiff argues the dismissal of Hardney III does not constitute a prior "strike" because he retains the option of re-filing "if his continued incarceration claim is reversed." ECF No. 23, pg. 4. This argument is unpersuasive because it is based on a misunderstanding of the basis of the prior court's dismissal of Hardney III. While the dismissal of a civil rights action under Heck's favorable termination rule generally does not constitute a "strike," see Washington v. Los Angeles Cty. Sheriff's Dep't, 833 F.3d 1048 (9th Cir. 2016), the prior court's dismissal of Hardney III was not based on the favorable termination rule. Rather, the prior court acknowledged that Plaintiff's claim related to the procedures used at the parole hearing could be cognizable under § 1983, but found that Plaintiff had failed to plead sufficient facts to establish such a claim.

The Court finds that the dismissal of Hardney III constitutes a prior "strike."

d. *Hardney IV*

In Hardney IV, the Ninth Circuit dismissed Plaintiff's appeal of the court's dismissal of Hardney III. See ECF No. 20, pg. 139 (Exhibit D to Request for Judicial Notice). The appellate court stated:

> Upon a review of the record, the response to the court's May 11, 2018 order, and the opening brief received on May 17, 2018, we conclude this appeal is frivolous. We therefore deny appellant's motion to proceed in forma pauperis (Docket Entry No. 7) and dismiss this appeal as frivolous, pursuant to 28 U.S.C. § 1915(e)(2).

ECF No. 20, pg. 139.

Plaintiff does not raise any argument as to Hardney IV, which the Court finds constitutes a "strike."

2. Imminent Danger Exception

Defendants contend Plaintiff cannot proceed in forma pauperis despite these strikes pursuant to the imminent danger exception. Id. at 5-6. According to Defendants:

> Plaintiff alleges in his Complaint that: (1) Defendant Patel watched Plaintiff undress on November 6, 2018, and Defendant Hampton found him guilty of an RVR for indecent exposure to cover-up Defendant Patel's sexual misconduct; (2) On November 15, 2018, Plaintiff appeared before an Institutional Classification Committee chaired by Defendant Meier, who was aware of widespread staff sexual misconduct at the prison and referred Plaintiff to a treatment program for prisoners with a history of

> indecent exposure based on false information; and (3) On December 14, 2018, Plaintiff refused to leave his cell and alleges that Defendant Bullard pepper sprayed Plaintiff in response while Defendant Houghland was present. (ECF No. 1.) However, Plaintiff did not allege that he was in imminent danger of a serious physical injury as a result of these disparate claims at the time he filed his Complaint in August of 2020, nor could such a danger be reasonably inferred from these allegations. Instead, Plaintiff's Complaint seeks money damages and declaratory/injunctive relief against Defendants based on their alleged past misconduct in 2018. *See Andrews*, 493 F.3d at 1055 (Imminent danger exception does not apply unless "the complaint makes a plausible allegation that the prisoner faced 'imminent danger of serious physical injury' at the time of filing.").
>
> ECF No. 19-1, pg .6.

Plaintiff does not respond to this argument in his opposition.

Again, the Court agrees with Defendants. As Defendants correctly observe, Plaintiff's allegations stem from incidents occurring on November 6, 2018, November 15, 2018, and December 14, 2018. Plaintiff does not allege any of these incidents put Plaintiff in imminent danger of serious physical injury. Nor can he. Plaintiff could not have been physically injured as a result of being watched while undressing on November 6, 2018. Similarly, Plaintiff could not have been physically injured as a result of being found guilty of a rules violation. Nor could Plaintiff have been physically injured as a result of his allegations relating to the November 15, 2018, classification committee meeting. While Plaintiff plausibly alleges a physical injury as a result of being pepper sprayed on December 14, 2018, Plaintiff's claim in this regard relates to conduct which occurred before the complaint was filed. Because Plaintiff does not allege a danger which was imminent as of the date he filed his complaint in August 2020, see Andrews, 493 F.3d at 1055, and because Plaintiff does not allege a continuing practice or effect or prior misconduct, see Williams, 775 F.3d at 1190, the imminent danger exception does not apply in this case to preserve Plaintiff's ability to proceed in forma pauperis.

**B. Severance of Improperly Joined Claims**

Here, the Court finds that Plaintiff's in forma pauperis status should be revoked. As stated above, the Court also finds that the proper disposition upon revocation of in forma pauperis status is dismissal of the entire action without prejudice to re-filing upon pre-payment of the filing fee. A dismissal of the entire action renders Defendants' arguments concerning

improper joinder of claims moot, subject to renewal if Plaintiff re-files a new action which continues to improperly join claims. Moreover, any discussion of improperly joined claims in the context of a dismissal based on revocation of in forma pauperis status would merely be advisory. Finally, given that Plaintiff is not entitled to proceed in forma pauperis in this action, he would not be entitled to proceed in forma pauperis in any further actions he might file should the Court determine that claims were improperly joined. Dismissal here is thus preferable as it will put the choice squarely before Plaintiff whether to proceed with possibly disparate claims in separate actions because he will be required to pay the filing fee for each such action.

## III. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion, ECF No. 19, be granted insofar as the Court concludes that Plaintiff's in forma pauperis status should be revoked; and

2. This action be dismissed without prejudice to re-filing accompanied by pre-payment of the filing fee.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 19, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE